JOSEPH N. AKROTIRIANAKIS (SBN 197971)
  jakro@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:   (213) 443-4355
Facsimile:   (213) 443-4310

MATTHEW M. LELAND (*pro hac vice*)
  mleland@kslaw.com
ASHLEY C. PARRISH (*pro hac vice*)
  aparrish@kslaw.com
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
2nd Floor
Washington, DC 20006
Telephone:   (202) 737-0500
Facsimile:   (202) 626-3737

Attorneys for Plaintiffs
JANE DOE, STEPHEN ALBRIGHT,
AMERICAN KIDNEY FUND, INC.,
AND DIALYSIS PATIENT CITIZENS, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, *et al.*, | **Case No. 8:19-cv-2105-DOC(ADSx)** |
| Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| ROB BONTA, in his Official Capacity as Attorney General of California, *et al.*, | Date:        May 2, 2022<br>Time:        8:30 AM<br>Place:       Courtroom 9D |
| Defendants. | |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

I.    INTRODUCTION ..................................................................................... 1

II.   ARGUMENT .............................................................................................. 1

    A.   The Factual Record Has Not Meaningfully Changed Since this
       Court Preliminarily Enjoined AB 290. ........................................... 1

    B.   AB 290 Violates the First Amendment. .......................................... 4

       1.   AB 290 Violates AKF's Right to Free Speech. ..................... 4

          a.   AB 290's Content-Based Speech Restrictions Are
            Subject to Strict Scrutiny. ......................................... 4

          b.   AB 290 Fails Under Any Level of Scrutiny. ...................... 6

       2.   AB 290 Violates AKF's Rights of Association. ................... 9

       3.   AB 290 Is Unconstitutionally Vague. ................................. 11

       4.   AB 290 Violates AKF's Right to Petition. ......................... 12

    C.   AB 290 Is Preempted by Federal Law. ......................................... 12

       1.   AB 290 Is Preempted by the Beneficiary Inducement
         Statute. ............................................................................... 13

       2.   AB 290 Is Preempted by the Medicare Secondary Payer
         Act. .................................................................................... 15

III.  CONCLUSION ........................................................................................ 16

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

*Am. Surety Co. of New York. v. Marotta,*
    287 U.S. 513 (1933)............................................................................15

*Ams. for Prosperity Found. v. Bonta,*
    141 S. Ct. 2373 (2021)........................................................................11

*Askins v. U.S. Dep't of Homeland Sec.,*
    899 F.3d 1035 (9th Cir. 2018) ...............................................................9

*Bolger v. Youngs Drug Prods. Corp.,*
    463 U.S. 60 (1983).................................................................................5

*DaVita Inc. v. Amy's Kitchen, Inc.,*
    981 F.3d 664 (9th Cir. 2020) .............................................................16

*Doe v. Becerra,*
    Nos. SA CV 19-2105-DOC-ADS, SA CV 19-2130-DOC-ADS,
    2019 WL 8227464 (C.D. Cal. Dec. 30, 2019)...........................*passim*

*Edenfield v. Fane,*
    507 U.S. 761 (1993)......................................................................2, 3, 8

*Geier v. Am. Honda Motor Co.,*
    529 U.S. 861 (2000).............................................................................16

*Greater New Orleans Broad. Ass'n, Inc. v. United States,*
    527 U.S. 173 (1999)...............................................................................7

*Hunt v. City of Los Angeles,*
    638 F.3d 703 (9th Cir. 2011) .................................................................5

*IMDb.com Inc. v. Becerra,*
    962 F.3d 1111 (9th Cir. 2020) ......................................................7, 8, 9

*IMDB.com, Inc. v. Becerra,*
    257 F. Supp. 3d 1099 (N.D. Cal. 2017)..................................................7

*In re Yochum,*
    89 F.3d 661 (9th Cir. 1996) ................................................................15

*Interpipe Contracting, Inc. v. Becerra*,
  898 F.3d 879 (9th Cir. 2018) .......................................................................9, 10

*Kingdomware Techs., Inc. v. United States*,
  579 U.S. 162 (2016)....................................................................................10, 11

*Merck Sharp & Dohme Corp. v. Albrecht*,
  139 S. Ct. 1668 (2019)................................................................................13, 14

*Montgomery v. Specialized Loan Servicing, LLC*,
  No. 18 CV-1257 PSG (KK),
  2018 WL 3756413 (C.D. Cal. Aug. 6, 2018) ...................................................11

*Mutual Pharm. Co. v. Bartlett*,
  570 U.S. 472 (2013)..........................................................................................13

*NAACP v. Alabama ex rel. Patterson*,
  357 U.S. 449 (1958)..........................................................................................11

*Nat'l Fed'n Indep. Bus. v. Sebelius*,
  567 U.S. 519 (2012)..........................................................................................12

*R.A.V. v. City of St. Paul*,
  505 U.S. 377 (1992)............................................................................................5

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015)........................................................................................4, 5

*Riley v. Nat'l Fed'n of the Blind of North Carolina, Inc.*,
  487 U.S. 781 (1988)........................................................................................4, 9

*Safeco Ins. Co. of America v. Burr*,
  551 U.S. 47 (2007)............................................................................................11

*Sessions v. Dimaya*,
  138 S. Ct. 1204 (2018)......................................................................................12

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*,
  502 U.S. 105 (1991)........................................................................................5, 9

*United States v. Menasche*,
  348 U.S. 528 (1955)..........................................................................................11

*United States v. Playboy Entm't Grp., Inc.*,
    529 U.S. 803 (2000)....................................................................................7, 8

*Valle del Sol Inc. v. Whiting*,
    732 F.3d 1006 (9th Cir. 2013) ..................................................................12

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*,
    471 U.S. 626 (1985)......................................................................................6

**Statutes & Regulations**

42 U.S.C. § 1320a-7d................................................................................14

42 U.S.C. § 1395y(b)(1)(C) .....................................................................15

Cal. Health & Safety Code § 1346 ............................................................8

Cal. Health & Safety Code § 1387 ............................................................8

Cal. Health & Safety Code § 1390 ............................................................8

Cal. Health & Safety Code § 1391 ............................................................8

Cal. Health & Safety Code § 1392 ............................................................8

Cal. Ins. Code § 12928.6...........................................................................8

42 C.F.R. § 1008.43 .................................................................................13

42 C.F.R. § 411.161(b)(2)(iv)..................................................................15

**Other Authorities**

AB 290, 2019-2020 Reg. Sess. (Cal. 2019)......................................*passim*

## I.     INTRODUCTION

Nothing in the State's briefing alters this Court's earlier, well-reasoned conclusion: AB 290 does not pass constitutional muster.  Despite the two-year pause, ample opportunities for discovery, and multiple rounds of briefing, the State has not identified any facts that could justify AB 290.  Indeed, the State has not presented a single example of the supposedly "well documented" problem that AB 290 purports to remedy.  Instead, the State has simply recycled the same speculation and arguments that it unsuccessfully advanced during the preliminary injunction briefing.

The State's failures are inexcusable given the life-threatening stakes for many of California's most vulnerable end-stage renal disease ("ESRD") patients.  AB 290 serves no legitimate purpose and, if it goes into effect, thousands of patients will be harmed. But there is no reason the Court should let that happen because there are no genuine disputes over the facts necessary to decide this case.  The Court has already preliminarily determined that AB 290 violates the First Amendment, and the State has come forward with no evidence or arguments that could change that determination.  In addition, AB 290 creates an irreconcilable conflict with federal law and the State has come forward with no evidence that could resolve that conflict.  Accordingly, Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment and deny the State's Motion for Summary Judgment.

## II.     ARGUMENT

### A.     The Factual Record Has Not Meaningfully Changed Since this Court Preliminarily Enjoined AB 290.

When the Court preliminarily enjoined AB 290, it carefully reviewed the State's justifications for the statute's intrusions on Plaintiffs' constitutional rights and "question[ed]" whether the harms AB 290 purported to remedy were "real."  *Doe v. Becerra*, Nos. SA CV 19-2105-DOC-ADS, SA CV 19-2130-DOC-ADS, 2019 WL 8227464, at *5 (C.D. Cal. Dec. 30, 2019).  The Court pointed out that "the State h[ad] yet to identify a single California patient steered into a private insurance plan by a

dialysis provider or third-party payer." *Id.* The State was similarly unable to offer any evidence that the California health insurance pool had been, or was going to be, distorted. *Id.* "If these harms were real, rather than speculative or conjectural, the State . . . would *already* understand and be able to demonstrate these economic effects." *Id.*

The Court further held that AB 290 was not properly tailored. Instead of AB 290's vague and overinclusive Steering Ban, the State could have relied on existing antifraud laws or boosted efforts to educate patients about their insurance options. *Id.* at *6. And instead of the Reimbursement Cap, which penalizes association with AKF, the State could have "directly regulat[ed] insurance rates." *Id.* at *8. At core, the Court recognized that the State could not justify AB 290 with "'mere speculation or conjecture'"; instead, the State had to "'demonstrate that the harms it recites are real and that its restriction[s] will in fact alleviate them to a material degree.'" *Id.* at *5 (quoting *Edenfield v. Fane*, 507 U.S. 761, 770–71 (1993)).

The State has not met that burden. Instead, the undisputed facts underscore that the Court's preliminary conclusions were correct and that the State has no justification for AB 290. Significantly, the State does not dispute the tragic nature of end-stage renal disease ("ESRD") or that dialysis is a critical, life-saving treatment for ESRD patients. *See* Defs.' Response to Pls.' Statement of Uncontroverted Facts ¶¶ 1–17, Dkt. 153-5 ("State RSUF"). Nor does the State dispute the devastating impact of ESRD on Plaintiffs Jane Doe and Stephen Albright's lives or that AKF's Health Insurance Premium Program ("HIPP") has helped Plaintiffs (and other very sick dialysis patients) maintain their insurance. *See* State RSUF ¶¶ 21–29, 32–39. The State also does not dispute that Medicare and other forms of public insurance may not be appropriate for all patients and their families. *See* State RSUF ¶¶ 53–56, 58–60, 62–63.

Nor does the State contest most of the facts of HIPP's function or purpose. It does not dispute that HIPP supports thousands of low-income, minority, and uniquely vulnerable dialysis patients in California. *See* State RSUF ¶¶ 66, 69–71, 76–77. There is also no dispute that dialysis patients already have insurance when they apply to HIPP.

*See* State RSUF ¶¶ 73–74.[1]  Likewise, there is no disagreement that AKF does not help patients find new insurance and does not advocate patients keep or switch their existing insurance.  State RSUF ¶ 78.

The parties also agree in many material respects about the scope and status of Advisory Opinion 97-1 and AB 290.  *See* State RSUF ¶¶ 89–98, 99–101, 104–105.  In particular, the State agrees that the Department of Health and Human Services "has never alleged or determined that AKF has operated HIPP out of strict compliance with Advisory Opinion 97-1."  State RSUF ¶ 98.  The State also agrees that "[i]f HIPP were to materially deviate from practices described in Advisory Opinion 97-1, then AKF would lose its safe-harbor protection."  State RSUF ¶ 97.  And the State agrees that California enacted AB 290 to address the purported problem of patients being "steer[ed]" onto commercial insurance plans against patients' best interests.  State RSUF ¶ 100.

The parties' agreement on these facts is unremarkable.  What is remarkable is the State's continued inability to produce any concrete, reliable evidence of patient steering—the evil AB 290 purports to address.  Nowhere does the State identify even one California patient who has been steered.  To the extent the State offers any support for its allegations of "steering," it is cobbled together from snippets of self-interested insurance company allegations, a few newspaper articles, a passing remark in an AKF manual, and unproven allegations in securities complaints.  *See* AKF Br. 12–14; AKF Opp. 8–11.  Even if the Court were to accept such "evidence," it remains the kind of "'mere speculation or conjecture'" that this Court properly rejected during the preliminary injunction phase.  *Doe*, 2019 WL 8227464, at *5 (quoting *Edenfield*, 507 U.S. at 770–71).

---

[1] The State contests that "HIPP applicants select their health insurance with no input from AKF," Dkt. 153-5 ¶ 74 (Defs.' Response to Pls.' Statement of Uncontroverted Facts), but cites to a misleading quotation from an AKF document addressed to *dialysis providers*, Dkt. 155-2 ¶ 50 (Plaintiffs' Statement of Genuine Disputes of Material Fact).

1    In short, the State's case offers no reason for the Court to change its views

2    regarding the constitutional infirmities of AB 290.  The undisputed facts confirm that

3    AB 290 intrudes on First Amendment rights without lawful justification.  It is therefore

4    invalid and should be struck down.

5         **B.    AB 290 Violates the First Amendment.**

6         In addition to its failure to bring forward any facts that could support its position,

7    the State also continues to rely on meritless legal arguments.  None of its arguments are

8    sufficient to defend AB 290's intrusions on AKF's First Amendment rights.  *See* AKF

9    Br. 8–19; AKF Opp. 2–16; *Doe*, 2019 WL 8227464, at *4–9.

10        **1.  AB 290 Violates AKF's Right to Free Speech.**

11        AB 290 violates AKF's free speech rights under any level of First Amendment

12   scrutiny.

13             ***a.  AB 290's Content-Based Speech Restrictions Are Subject to Strict***

14                 ***Scrutiny.***

15        AB 290 contains "presumptively unconstitutional" content-based speech

16   regulations that are subject to "strict scrutiny."  AKF Br. 8–12; AKF Opp. 3–7.

17   Regulations are "content based" when they "appl[y] to particular speech [due to] the

18   topic discussed," *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015), or "[m]andat[e]

19   speech that a speaker would not otherwise make," *Riley v. Nat'l Fed'n of the Blind of

20   North Carolina, Inc.*, 487 U.S. 781, 795 (1988).  AB 290's provisions target a

21   disfavored group of speakers (AKF and dialysis providers), tell them what they can and

22   cannot say, and compel AKF to speak when it otherwise would not.[2]  These are all

23   canonical examples of content-based speech regulations.  *See* AKF Opp. 3–4 (collecting

24

25   [2] *See* AB 290 §§ 3(b)(4) & (5)(b)(4) (prohibiting AKF from "steer[ing], direct[ing], or
     advis[ing]" any patient "into or away from a specific coverage program option or health
26   care service plan contract"); *id.* §§ 3(b)(3) & 5(b)(3) (compelling AKF to inform
     patients of "all available health coverage options"); *id.* §§ 3(c)(1) & 5(c)(1) (requiring
27   AKF to provide an annual statement to health care service plans); *id.* §§ 3(c)(2) &
28   5(c)(2) (requiring AKF to disclose HIPP patient names to health insurers).

1   cases).  And it is black-letter law that strict scrutiny applies to such restrictions.  *E.g.,*

2   *Reed*, 576 U.S. at 163; *R.A.V. v. City of St. Paul*, 505 U.S. 377, 395 (1992); *Simon &*

3   *Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115, 118

4   (1991).  The State must therefore show that AB 290's restrictions "are narrowly tailored

5   to serve compelling state interests."  *Reed*, 576 U.S. at 163.

6          In response, the State argues that intermediate scrutiny applies because AKF

7   engages in "commercial speech."  State Opp. 8–9.  But AKF's speech—carried out

8   entirely in a charitable context—is not "commercial" in nature.  AKF Br. 11–12; AKF

9   Opp. 5–7.  Nor does it satisfy any of the criteria for "commercial speech" under *Bolger*.

10  AKF's speech is not an advertisement, AKF's speech does not "refer[] to a particular

11  product," and AKF does not have an "economic motivation."  *Hunt v. City of Los*

12  *Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (citing *Bolger v. Youngs Drug Prods. Corp.*,

13  463 U.S. 60, 66–67 (1983)).

14         While the State concedes that AKF's speech is not an advertisement, it asserts

15  that the Advising Restriction "meets the latter two *Bolger* factors."  State Opp. 8.  But

16  none of the State's arguments speaks to whether *AKF's* speech "refers to a particular

17  product."  *Hunt*, 638 F.3d at 715; State Opp. 8–9.  And the State's purported "evidence"

18  of AKF's "economic motive" has nothing to do with AKF.  *See* State Opp. 9 (discussing

19  "*[dialysis] providers'* bottom line" (emphasis added)).  AKF is a charity focused on

20  addressing kidney disease—its speech does not refer to any particular product and is

21  not driven by any economic motivation.  To the extent the State renews its argument

22  that AKF "promote[s]" "commercial insurance," State Br. 14, the record conclusively

23  shows otherwise, *see* AKF Opp. 5–6.  Less than one third of California HIPP patients

24  are covered by commercial insurance plans.  Dkt. 132-19 (Burton 2022 Decl. ¶ 26).

25  Moreover, HIPP patients arrive with insurance already in hand, and AKF provides no

26  input to HIPP applicants about their insurance choice.  *See* SUFCL ¶¶ 74, 78; *see also*

27  Dkt. 132-19 (Burton 2022 Decl. ¶ 23) (explaining AKF leaves "critical choices" about

28  patients' insurance coverage in "*patients' hands*").

The State also argues that AB 290's disclosure provisions are permissible because they compel the disclosure of only "'purely factual and uncontroversial'" information. State Opp. 17–20 (citing and quoting *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985)). This argument fails because AKF's speech is not "commercial" and therefore not within that narrow band of regulation. *See supra* at 5; AKF Opp. 5–7. In any event, AB 290 *does not* mandate the disclosure of only "purely factual" and "uncontroversial" information. As AKF has already explained, AB 290 requires AKF to (1) deliver a state-preferred message it otherwise would not communicate, because AKF does not discuss insurance options with HIPP beneficiaries at all; (2) certify its compliance with unconstitutional requirements to insurers; and (3) disclose the names of HIPP beneficiaries to insurers. *See* AKF Opp. 7. These disclosures are all "controversial." *See id.* The State has no meaningful response to these basic points.[3] Thus, AB 290's content-based restrictions are subject to strict scrutiny.

### b. AB 290 Fails Under Any Level of Scrutiny.

In any event, AB 290 does not survive under any level of scrutiny because the State has no evidence of inappropriate patient "steering," the purported problem that motivated AB 290's enactment. *See supra* at 3; AKF Br. 12–14; AKF Opp. 8–11. The State's attempt to explain why AB 290 is properly tailored consists of a single conclusory sentence. *See* State Opp. 9; State Br. 15. Nothing in the State's briefing disturbs the Court's conclusion that AB 290's speech restrictions cannot pass muster. *See Doe*, 2019 WL 8227464 at *4–8.

---

[3] The State argues that AKF already discloses patient names through its "preferred" method of paying HIPP grants. State Opp. 17 n.13. Contrary to the State's assertion, paying HIPP grants directly to insurers is not AKF's "preferred" method of payment. Pls.' Respond to Defs.' Add'l Stmt. of Facts ¶ 85. Moreover, there is a wide gulf between AKF disclosing select patient names to select insurers to achieve its charitable mission and being compelled to disclose *every* patient to *every* private insurer. AB 290 compels AKF to speak when it otherwise would not. *See supra* at 4–5; *see also infra* at 9–11 (explaining disclosure requirements violation AKF's rights of association).

1         In its Opposition, the State's primary tactic is to regurgitate immaterial

2   "evidence" that is not meaningfully different from what the State pleaded during the

3   preliminary injunction phase. *See* State Opp. 9–12, 13–14. That evidence is insufficient

4   to carry the State's burden. As AKF has shown, the State's evidence of steering—

5   public comments from an enjoined CMS rule, an out-of-state investigation into the

6   conduct of a *single employee* of a dialysis provider, a smattering of news articles, and

7   mere *allegations* in securities complaints—proves nothing. *See supra* at 3; AKF Opp.

8   9–10. Most of these materials are facially irrelevant to AKF, a point the State implicitly

9   concedes. *See* State Opp. 19 n.14 (acknowledging AKF is not "part of th[e State's]

10  discussion" of evidence). Even if the State's "evidence" concerned AKF, it is

11  inadmissible hearsay and, at most, amounts only to "anecdote and supposition"

12  insufficient to justify restrictions on AKF's First Amendment rights. AKF Opp. 9–10;

13  *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 822 (2000). The State's

14  "evidence" of patient harms and rising health care costs is likewise deficient. *See* AKF

15  Opp. 10–11 (explaining State's admitted lack of evidence and flaws in the State's expert

16  reports).[4] Despite having two-and-a-half years and two summary judgment briefs to do

17  so, the State *still* has not come forward with any credible evidence that AKF has

18  "steered" any dialysis patients (or caused any other harm).

19        In a footnote, the State argues that it is "not confined" to AB 290's legislative

20  record. State Opp. 10 n.8. Yet the State ignores that it must have a basis for restricting

21  speech *before* it enacts speech restrictions. *IMDB.com, Inc. v. Becerra*, 257 F. Supp.

22  3d 1099, 1102 (N.D. Cal. 2017), *aff'd*, 962 F.3d 1111 (9th Cir. 2020) (holding state

23  could not "[r]estrict speech first and ask questions later"). Here, the Legislature enacted

24   

---

25  [4] The State, citing nothing, asserts that "cost savings" will "flow naturally" from a

26  "healthier [insurance] risk [pool] mix" and faults AKF for not disproving this bald

    assertion. State Opp. 14 n.12. But it is the State's burden to "justify[] the challenged

27  restriction." *Greater New Orleans Broad. Ass'n, Inc. v. United States*, 527 U.S. 173,

    183 (1999). The State has no evidence that AB 290 will reduce health care costs. *See*

28  AKF Br. 14; AKF Opp. 10–11.

AB 290 based on no reliable evidence. *See supra* at 3. Such "evidence" is plainly insufficient to carry the State's burden to show that it has a substantial interest in imposing content-based restrictions on speech, and no after-the-fact evidence presented by the State remedies this defect. *E.g.*, *Playboy Entm't Grp.*, 529 U.S. at 822 (finding a "handful of complaints" insufficient in light of "near barren legislative record"); *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1125–26 (9th Cir. 2020) (finding a "single, anecdotal account" in a news article and "generalized" statistics insufficient).

The State does not contest its failure to identify a single patient "steered" by AKF (or anyone else) into a commercial health insurance plan. *See* State Opp. 12; SUFCL ¶¶ 107, 116, 123; *see also* SUFCL ¶ 109 (no steps taken to identify "steered" patients). It instead deflects and makes excuses, asserting that its representatives "never purported to have firsthand knowledge of steering." State Opp. 12. Setting aside the troubling nature of this admission, the State's witnesses are Rule 30(b)(6) representatives of the departments tasked with *enforcing key provisions of AB 290*. *See* AB 290 §§ 3(b)(4), 5(b)(4); Cal. Health & Safety Code §§ 1346(a), 1387, 1390–92; Cal. Ins. Code § 12928.6(a). Their failure to "identify a[ny] victim of steering" does, in fact, "suggest that the State . . . lacked sufficient evidence" when it enacted the statute. State Opp. 12 (internal quotation omitted). The State also argues that it is "not required" to provide examples of "steered" patients. *Id.* But the State "must demonstrate that the harms it recites are real[.]" *Doe*, 2019 WL 8227464, at *5 (quoting *Edenfield*, 507 U.S. at 770–71). Because the State, even now, "has yet to identify a single California patient steered into a private insurance plan," that is strong evidence that "the[] recited harms are [not] real." *Id.*; *see also Playboy Entm't Grp.*, 529 U.S. at 822.

There is no merit to the State's half-hearted suggestion that AB 290 is the "least restrictive" means of addressing "steering." *See* State Opp. 14–15. The State faults AKF for not explaining why alternatives to AB 290 "would effectively address steering." *Id.* at 14. But that attempt to shift the burden only underscores the utter weakness of the State's position. "It is the *[State's] burden* to prove that [its] specific

restrictions are the least restrictive means available[.]" *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1045 (9th Cir. 2018) (emphasis added). The State asserts a "narrower [steering] ban" would "risk allowing some of these [methods of steering] to continue unabated," State Opp. 14, without explaining what "methods" would "continue," or how, or why. Likewise, the State's conclusory assertion that "state anti-fraud laws" are insufficient rings hollow. *E.g.*, *Riley*, 487 U.S. at 795 ("North Carolina has an antifraud law, and we presume that law enforcement officers are ready and able to enforce it."); *see also Doe*, 2019 WL 8227464, at *6 ("[T]he State could rely on antifraud law to protect patients . . . ."). The State also fails to explain why "increas[ing] its own educational efforts" would be inadequate. *Id.* And in any event, there is *no evidence* that the State "explored, or even considered" any less restrictive alternatives before enacting AB 290. *IMDB.com, Inc.*, 962 F.3d at 1125.

## 2.  AB 290 Violates AKF's Rights of Association.

AB 290 also violates AKF's First Amendment rights of association. *See* AKF Br. 14–17; AKF Opp. 12–14. The statute burdens association between AKF and its donors, requires AKF to alter its very mission of combatting kidney disease in California, and mandates that AKF reveal the name of *every single* California HIPP beneficiary to private insurance companies. AKF Br. 14–17; AKF Opp. 12–14. In response, the State retreads already-discredited arguments, attempts to rewrite the statute, or else ignores AKF's arguments entirely.

*First*, AKF has shown that the Reimbursement Penalty violates the First Amendment because it "operat[es] as [a] disincentive[]" for association between AKF and many of its 80,000 donors. AKF Opp. 13 (quoting *Simon & Schuster, Inc*, 502 U.S. at 115, 118). The State's primary response is to, yet again, claim that AKF has no right to "'amass funds.'" State Opp. 16–17 (quoting *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 892 (9th Cir. 2018)). Endless repetition does not make this argument any more persuasive. The case from which the quote is taken, *Interpipe*, is inapposite because the statute in that case did not "prevent[] employers . . . from contributing to

[the plaintiff].” 898 F.3d at 891, 893.  Here, the Reimbursement Penalty is designed to penalize dialysis providers from donating to AKF.  AKF Opp. 13.  The State offers no reason for this Court to revisit its conclusion that this punitive arrangement burdens charitable donations in a constitutionally significant way.  *Doe*, 2019 WL 8227464, at *6.

*Second*, AKF has shown that sections 3(b)(2) and 5(b)(2) of AB 290 violate the First Amendment because they require AKF to “agree not to condition financial assistance on eligibility for, or receipt of, any surgery, *transplant*, *procedure*, drug, or device,” thus requiring AKF to abandon its central mission of combatting kidney disease.  AB 290 §§ 3(b)(2), 5(b)(2) (emphasis added); *see also* AKF Br. 16; AKF Opp. 13–14.  The State’s response is an attempt to rewrite the statute.  The State asserts that the provisions merely “address[] certain practices” listed in AB 290’s legislative findings, such as “the withdrawal of premium assistance when a patient receives a kidney transplant.”  State Opp. 17 (citing AB 290 §§ 1(c) & (d)).  These limitations are found nowhere in sections 3(b)(2) and 5(b)(2) and cannot alter the provisions’ plain meaning.  *Cf. Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 172–73 (2016) (“The [prefatory] clause announces an objective that Congress hoped that the Department would achieve . . . but it does not change the plain meaning of the operative clause.” (citation omitted)).  More fundamentally, the State’s preferred interpretation is implausible.  If the State sought in sections 3(b)(2) and 5(b)(2) to limit only “certain practices,” the statute could have said so directly.  That AB 290 does not is sufficient to dispose of the State’s argument.[5]

*Third*, the State does not contest AKF’s showing that AB 290’s disclosure requirements violate the First Amendment.  *See* AKF Br. 17; AKF Opp. 14; State Opp. 16–17.  The argument is therefore conceded.  *E.g.*, *Montgomery v. Specialized Loan*

---

[5] Even accepting the State’s indefensible interpretation, sections 3(b)(2) and 5(b)(2) would be void for vagueness.  *See infra* at 11–12.  It is far from clear what “practices” sections 3(b)(2) and 5(b)(2) prohibit under the State’s proffered reading.

*Servicing, LLC*, No. 18 CV-1257 PSG (KK), 2018 WL 3756413, at *5 (C.D. Cal. Aug. 6, 2018) (holding "[a]rguments to which no response is supplied are deemed conceded" and collecting cases).  Moreover, even if the State had offered some response, the disclosure requirements should be struck down because "compelled disclosure of affiliation with groups engaged in advocacy" infringes AKF's freedom of association. *Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2382 (2021) (quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958)).

### 3. AB 290 Is Unconstitutionally Vague.

Nothing in the State's belabored, atextual interpretation responds meaningfully to AKF's evidence establishing that the Advising Restriction is unconstitutionally vague.  *See* AKF Br. 17–18; AKF Opp. 14–15.

The State first asserts that "the term 'advise' is not difficult to understand[.]" State Opp. 15.   But that only underscores that the Advising Restriction is unconstitutionally vague.  Rather than giving the terms "steer," "direct," and "advise" individual meaning, the State conflates all three directives and asserts that they prohibit "the forms of encouragement prohibited by AB 290."  *Id.*  Of course, the term "forms of encouragement" is itself entirely vague and found nowhere in the Advising Restriction.  Instead, the State gestures to one of AB 290's legislative findings.  *See* State Opp. 15 (quoting AB 290, § 1(c)).  But a "prefatory clause" cannot change the meaning of an "operative clause."  *Kingdomware Techs.*, 579 U.S. at 172–73. Moreover, the State's interpretation is divorced from the text of the Advising Restriction.  The terms "steer," "direct," and "advise" necessarily prohibit more than merely "[e]ncouraging patients to enroll in commercial insurance coverage for the financial benefit of the provider."  AB 290 § 1(c); *see Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 60 (2007) (noting courts must "'[g]ive effect, if possible, to every clause and word of a statute'" (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955)).  Ultimately, "[r]ewriting the statute is a job for the [California] legislature, if it is so inclined, and not for this court."  *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006,

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1  1021 (9th Cir. 2013).

2          The State also quibbles with the definition of "advise." State Opp. 16. The

3  multiple definitions the State offers show only that the Advising Restriction is vague.

4  *See id.* Indeed, the State has no answer for the fact that its *own representatives*

5  understand the Advising Restriction to encompass more than "steering" patients to

6  commercial insurance plans. *See* AKF Opp. 15; SUFCL ¶¶ 124–25. The Advising

7  Restriction thus fails to give "ordinary people . . . fair notice of the conduct" it prohibits

8  and should be struck down as unconstitutionally vague. *Sessions v. Dimaya*, 138 S. Ct.

9  1204, 1212 (2018) (internal quotation marks omitted).

10         **4.  AB 290 Violates AKF's Right to Petition.**

11         AB 290 violates AKF's First Amendment right to petition the government by

12  requiring AKF to seek a new advisory opinion from the HHS OIG in order to delay AB

13  290's effective date. *See* AKF Br. 18–19; AKF Opp. 15–16. The State's Opposition

14  contends that AB 290 "merely provides AKF the *option* to request" an updated opinion.

15  State Opp. 20 (emphasis in original). But, as Chief Justice Roberts has observed, a

16  government "inducement" may be little more than a "gun to the head." *Nat'l Fed'n*

17  *Indep. Bus. v. Sebelius*, 567 U.S. 519, 581 (2012) (Roberts, C.J.). Here, AB 290

18  penalizes AKF based on how it chooses to petition the government, thus infringing

19  AKF's First Amendment rights. *See* AKF Br. 18–19; AKF Opp. 15–16 (collecting

20  cases). This provides yet another reason to strike down the statute.

21         **C.     AB 290 Is Preempted by Federal Law.**

22         In addition to its First Amendment infirmities, AB 290 violates the Supremacy

23  Clause in two respects. *First*, it conflicts with the Beneficiary Inducement Statute as

24  that statute's application has been interpreted by OIG in Advisory Opinion 97-1. *See*

25  AKF Br. 19–23; AKF Opp. 16–21. *Second*, AB 290 conflicts with the Medicare

26  Secondary Payer Act by treating HIPP patients with ESRD differently from other

27  patients with kidney disease. *See* AKF Br. 23–25; AKF Opp. 24–25.

28

**1.  AB 290 Is Preempted by the Beneficiary Inducement Statute.**

AB 290 would force AKF to change HIPP in ways that would put it outside the safe harbor of Advisory Opinion 97-1.  *See* AKF Br. 19–23; AKF Opp. 16–21. Advisory Opinion 97-1 "is limited in scope to the *specific* arrangement described [within it]."  Dkt. 29-2 (RJN Exh. 2, at 26) (Advisory Opinion 97-1) (emphasis added); *see also* 42 C.F.R. § 1008.43(b).  If AKF were to adjust HIPP to conform with AB 290, AKF would run a significant risk of violating the Beneficiary Inducement Statute.  And if AKF does not adjust HIPP in this manner, it will be in violation of California law. AB 290 is therefore preempted because it is "'impossible' for [AKF] to comply with both state and federal requirements."  *Merck Sharp & Dohme Corp. v. Albrecht*, 139 S. Ct. 1668, 1672 (2019) (quoting *Mutual Pharm. Co. v. Bartlett*, 570 U.S. 472, 480 (2013)).

Despite AKF's consistent position for more than two years of litigation, the State has not meaningfully engaged with it.  Instead, the State argues that compliance with both AB 290 and federal law is not impossible because there is "no federal requirement for AKF to run . . . HIPP."  State Opp. 22.  That argument is indistinguishable from the "stop-selling theory" of preemption the Supreme Court rejected in *Mutual Pharmaceutical Co., Inc. v. Bartlett* as "as incompatible with [its] pre-emption jurisprudence."  570 U.S. at 475, 488.  As the Court explained, "an actor seeking to satisfy both his federal- and state-law obligations is not required to cease acting altogether in order to avoid liability."  *Id.* at 488.  Neither federal law nor the Constitution requires AKF to abandon its charitable activities to avoid a conflict that the State has itself created.

In advancing its position, the State misapprehends Supreme Court precedent. Pointing to *Merck Sharp & Dohme Corp. v. Albrecht* and *PLIVA, Inc. v. Mensing*, the State argues that, in those cases, "it was clear that federal law placed affirmative requirements on drug manufacturers to label their products in certain ways, and that state laws imposing conflicting requirements may be preempted."  State Opp. 21–22.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

So too here.  The Beneficiary Inducement Statute places an affirmative requirement on parties not to offer "remuneration" in order to influence individual's choice of a health care provider.  *See* AKF Opp. 16.  AKF has operated HIPP under the aegis of Advisory Opinion 97-1 to avoid liability under the Beneficiary Inducement Statute.  *See id.* 17.  There is no dispute that, if AKF were to adjust HIPP to conform to AB 290, that safe harbor would be withdrawn.  *See id.* 19.  AKF is thus left with the impossible choice of risking a violation of federal or California law.[6]

The State continues to claim that Advisory Opinion 97-1 does not conflict with AB 290.  *See* State Opp. 23.  But that misses the point.  Plaintiffs' argument is that AB 290 conflicts with the Beneficiary Inducement Statute, not the Advisory Opinion itself. In a similar vein, the State also claims that Advisory Opinion 97-1 does not carry the force of federal law.  *See id.* 22–23.  That is incorrect on its own terms, as "[e]ach advisory opinion issued by the Secretary shall be binding as to the Secretary and the party or parties requesting the opinion."   42 U.S.C. § 1320a-7d(b)(4).   More fundamentally, the State's argument is irrelevant.  The issue is that AB 290, by forcing AKF out of the safe harbor created by Advisory Opinion 97-1, puts AKF at risk of violating the Beneficiary Inducement Statute.

The State also repeats its argument that AB 290 does not conflict with the factual predicates of Advisory Opinion 97-1.  *See* State Opp. 23–24.  Each point the State raises is incorrect.  Contrary to the State's position, Advisory Opinion 97-1 is not limited to sanctioning payments for Medicare Part B or Medigap premiums.  *See id.* 23.  Advisory Opinion 97-1 explicitly recognizes that HIPP "provides financial assistance to financially needy ESRD patients . . . , *including* Medicare Part B and Medigap premiums."  Dkt. 29-2 (RJN Exh. 2, at 21) (emphasis added).  The term "including"

---

[6] While the State invokes *Albrecht*'s reference to "clear evidence" of preemptive effect, *see* State Opp. 21, the Supreme Court explained in that case that, at core, "the judge must simply ask himself or herself whether the relevant federal and state law irreconcilably conflict."  139 S. Ct. at 1679 (cleaned up).  AB 290's provisions force that irreconcilable conflict with the Beneficiary Inducement Statute.

does not limit Advisory Opinion 97-1; it clarifies that HIPP can include a variety of health insurance premium payments.  *See In re Yochum*, 89 F.3d 661, 668 (9th Cir. 1996) ("'[I]nclude' is frequently, if not generally, used as a word of extension or enlargement rather than as one of limitation or enumeration." (quoting *Am. Surety Co. of New York. v. Marotta*, 287 U.S. 513, 517 (1933))); *see also* AKF Opp. 22.  Moreover, Advisory Opinion 97-1 observed that "[HIPP] [a]ssistance is available to *all* eligible patients on an *equal* basis."  Dkt. 29-2 (RJN Exh. 2, at 21) (emphasis added).

The State continues to argue that AB 290 would not necessarily lead HIPP patients to learn whether their dialysis provider had donated to AKF, thus breaching the terms of Advisory Opinion 97-1.  *See* State Opp. 23–24; *see also* AKF Opp. 17–19.  But the State itself acknowledges that HIPP recipients could "*potentially* learn that their provider is a donor."  State Opp. 24 (emphasis added).  The California Legislative Counsel Bureau agrees that "it may be possible . . . for a patient to infer that the patient's provider has donated [to AKF]."  Dkt. 29-2 (RJN Exh. 3, at 34–35).  In any event, the State's view is irrelevant.  As the Legislative Counsel Bureau also recognized, whether AKF will remain within the safe harbor of Advisory Opinion 97-1 "would be a factual determination made by *the OIG*."  *Id.* at 34–35 (emphasis added).  AKF should not be forced to take the fatal risk that OIG will make an adverse determination.  *See* Dkt. 132-19 (Burton 2022 Decl. ¶¶ 36, 38, 40).

## 2.  AB 290 Is Preempted by the Medicare Secondary Payer Act.

AB 290 is also preempted by the Medicare Secondary Payer Act ("MSPA").  *See* AKF Br. 23–25; AKF Opp. 24–25.  AB 290 creates a novel, reduced reimbursement rate for ESRD patients that benefit from HIPP.  *See* AB 290, §§ 3(e), 3(h)(2)(A), 5(e), 5(h)(1)(A) (providing that dialysis providers that contribute to AKF are "financially interested" and are subject to reduced reimbursement rates for HIPP patients they treat).  That scheme necessarily differentiates between patients with ESRD and other patients.  The MSPA prohibits such differentiation.  *See* 42 U.S.C. § 1395y(b)(1)(C); 42 C.F.R. § 411.161(b)(2)(iv); SUFCL ¶¶ 48–49.

The State continues to rely on *DaVita Inc. v. Amy's Kitchen, Inc.*, 981 F.3d 664 (9th Cir. 2020), to argue that AB 290 does not conflict with the MSPA. *See* State Opp. 25. The State contends that AB 290 does not request differentiation between patients based on their ESRD, citing *Amy Kitchen*'s statement that a "plan that provides identical benefits to someone with ESRD as to someone without ESRD does not 'differentiate' between those two classes." 981 F.3d at 678.

But, as Plaintiffs explained before, *Amy's Kitchen* is not a preemption case. *See* AKF Opp. 25. Moreover, the State ignores the sentence that immediately follows its preferred quote: "That simplistic approach must yield for treatments that apply exclusively to ESRD patients, because differential coverage of ESRD-specific treatments is no different than differential treatment of persons with ESRD." *Amy's Kitchen*, 981 F.3d at 678 (emphasis omitted). Here, HIPP only pays for dialysis treatments for ESRD patients. And there is no dispute that AB 290 creates two different classes of ESRD patients: HIPP patients treated at facilities owned by donors to AKF, and all other ESRD patients. That differentiation "present[s] an obstacle to the variety and mix of [regulatory approaches]" selected by Congress and is therefore preempted by federal law. *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881 (2000).

## III.  CONCLUSION

When a State seeks to intrude on First Amendment rights in an area that has been carefully regulated by the federal government, it must show that it has narrowly tailored the legislation to serve a legitimate state interest, and it must ensure that the legislation does not conflict with federal law. Meeting those burdens is especially important where, as here, the undisputed evidence shows that AB 290 poses life-threatening consequences for California's most vulnerable ESRD patients. But after years of litigation, the State still has not come forward with meaningful evidence that AB 290's content-based restrictions on speech are justified by any legitimate state interest. Nor has it responded meaningfully to the undisputed evidence showing that AB 290 creates an irreconcilable conflict with federal law. The State's failure to bring into focus any

facts sufficient to carry its burdens should be decisive.  There is no need for trial or further proceedings; instead, the Court should adhere to its preliminary rulings and strike down AB 290.

Plaintiffs respectfully request that the Court deny Defendants' Motion for Summary Judgment and instead grant Plaintiffs' Motion for Summary Judgment.

Dated: April 18, 2022

**KING & SPALDING LLP**

By: */s/Joseph N. Akrotirianakis*
JOSEPH N. AKROTIRIANAKIS
MATTHEW M. LELAND
ASHLEY C. PARRISH

Attorneys for Plaintiffs
JANE DOE, STEPHEN ALBRIGHT, AMERICAN KIDNEY FUND, INC., and DIALYSIS PATIENT CITIZENS, INC.