1   JOSEPH N. AKROTIRIANAKIS (SBN 197971)
    *jakro@kslaw.com*
2   KING & SPALDING LLP
    633 West Fifth Street, Suite 1600
3   Los Angeles, CA 90071
    Telephone:   (213) 443-4355
4   Facsimile:   (213) 443-4310

5   ASHLEY C. PARRISH (*pro hac vice*)
    *aparrish@kslaw.com*
6   KING & SPALDING LLP
    1700 Pennsylvania Avenue, NW
7   2nd Floor
    Washington, DC 20006
8   Telephone:   (202) 737-0500
    Facsimile:   (202) 626-3737
9
    Attorneys for Plaintiffs
10  JANE DOE, STEPHEN ALBRIGHT,
    AMERICAN KIDNEY FUND, INC.,
11  AND DIALYSIS PATIENT CITIZENS, INC.

12                    **UNITED STATES DISTRICT COURT**

13                   **CENTRAL DISTRICT OF CALIFORNIA**

14

15  | JANE DOE, *et al.*, | Case No. 8:19-cv-2105-DOC(ADSx) |

16  Plaintiffs,   **THE *DOE* PLAINTIFFS'**
                  **SUPPLEMENTAL BRIEF**
17  v.

18  ROB BONTA, in his Official   Date:    December 16, 2022
    Capacity as Attorney General of   Time:    9:00 AM
19  California, *et al.*,   Place:    Courtroom 10A

20

21                    Defendants.

22

23

24

25

26

27

28

The Court has asked the parties to submit supplemental briefing addressing the relevance of *Marietta Memorial Hospital Employee Health Benefit Plan v. DaVita Inc.*, 142 S. Ct. 1968 (2022), to one of the several claims raised in this case—specifically, whether AB 290 is preempted by the Medicare Secondary Payer Act ("MSPA"). Because *Marietta* is not a preemption case, it has little relevance to that claim (and no relevance to plaintiffs' separate First Amendment claims and preemption arguments under the Beneficiary Inducement Statute). If anything, the Supreme Court's analysis in *Marietta* supports the *Doe* plaintiffs' contention that AB 290 interferes with Congress's objectives under the MSPA and is therefore preempted under federal law.[1]

## ANALYSIS

The *Doe* plaintiffs contend that AB 290 is preempted by the MSPA because it interferes with Congress's objectives and frustrates the purposes of federal law. *See Doe* MSJ at 23–25, *Doe* MSJ Opp. at 24–25, *Doe* MSJ Reply at 15–16. In particular, AB 290 is inconsistent with the MSPA because it impermissibly forces healthcare plans to differentiate between two classes of ESRD patients and provides lower reimbursement for ESRD patients with HIPP assistance as compared to other types of patients. More broadly, AB 290 is preempted under the MSPA because it undermines the objectives of federal law by creating incentives for ESRD patients to leave their private insurance coverage, imposing additional costs on the federal Medicare program.

The Supreme Court's *Marietta* decision has little relevance to that claim. In *Marietta*, the Supreme Court considered whether a "group health plan that provides limited benefits for outpatient dialysis—but does so uniformly for all plan participants—violates the Medicare Secondary Payer statute." 142 S. Ct. at 1971. In determining that the answer is "no," the Court emphasized that the purpose of the federal statute was to prevent plans from "denying or reducing coverage for an individual who has end-stage renal disease, thereby forcing Medicare to incur more of

---

[1] The Provider plaintiffs are filing a separate supplemental brief addressing the relevance of *Marietta* to their claims.

those costs." *Id.* at 1972.  Accordingly, "a group health plan may not single out plan participants with end-stage renal disease by imposing higher deductibles on them, or by covering fewer services for them."  *Id.* at 1973 (citing 42 U.S.C. § 1395y(b)(1)(C)(ii) & 42 C.F.R. §§ 411.161(b)(2)(i)–(iv)).  The Court nonetheless rejected the argument that the MSPA "authorizes liability even when a plan limits benefits in a uniform way if the limitation on benefits has a disparate impact on individuals with end-stage renal disease."  *Id.*  The Court concluded that the statute's express text "cannot be read to encompass a disparate-impact theory."  *Id.*  That theory "is atextual [and] would be all but impossible to fairly implement" because, absent any benchmark in the statute, there is no way for a court to determine when a plan's benefits for outpatient dialysis are inadequate. *Id.* at 1974.

   *Marietta* has little relevance to the *Doe* plaintiffs' MSPA claim because *Marietta* is not a *preemption* case.  The Supreme Court's opinion does not mention the word "preemption," and no preemption argument was presented for decision.  Similarly, the *Doe* plaintiffs here are not seeking to assert a cause of action based on a disparate-impact theory of liability.  Nonetheless, the State has repeatedly conflated whether AB 290 is *preempted by* federal law with the narrower question of what private conduct gives rise to a disparate-impact theory of liability, relying on *DaVita Inc. v. Amy's Kitchen*, 981 F. 3d 664 (9th Cir. 2020).  *See* Defs.' MSJ 12–13 ("Plaintiffs argue that AB 290 requires insurers to violate both of these provisions . . . .");  Defs.' Opp. MSJ 24–25 ("Plaintiffs fail to show that AB 290 requires health plans to treat patients differently based on their Medicare eligibility or their ESRD status.").  But determining whether a federal statute preempts conflicting state law requires applying a different inquiry than determining whether a party has violated an express statutory provision.

   State statutes, such as AB 290, are preempted by federal law if they "'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[.]'"  *Arizona v. United States*, 567 U.S. 387, 399 (2012) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)); *see also Geier v. Am. Honda Motor Co.*, 529 U.S.

861, 881 (2000) (holding laws that "present[] an obstacle to the variety and mix of [regulatory approaches]" selected by Congress are preempted). "'Preemption may be either express or implied, and is compelled whether Congress'[s] command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1203 (9th Cir. 2002) (quoting *FMC Corp. v. Holliday*, 498 U.S. 52, 56–57 (1990)). Preemption thus applies not only when a state statute forces a "violation" of a federal statute's express terms, but also when the state statute is "conflicting; contrary to; . . . repugn[ant] [to]; differen[t] [from]; irreconcilab[le] [with]; inconsisten[t] [with] . . . [or] interfere[s]" with the express or implied purposes of federal law. *Geier*, 492 U.S. at 873 (quoting *Davidowitz*, 312 U.S. at 67). Accordingly, while a state law that requires parties to violate the express terms of a federal statute would be preempted, that is not the only basis for preemption. AB 290 need not directly violate the MSPA's express terms in order to frustrate Congress's statutory objectives. *See Nation v. City of Glendale*, 804 F.3d 1292, 1297 (9th Cir. 2015) (distinguishing between different types of preemption).

As plaintiffs have shown, AB 290 is preempted by the MSPA because it frustrates, and poses a significant obstacle to accomplishing, Congress's objectives. *See* Doe MSJ 23–25. AB 290 creates two classes of ESRD patients—(1) ESRD patients with HIPP assistance treated at facilities owned by donors to AKF, and (2) all other ESRD patients—and results in forcing healthcare plans to differentiate between, on one hand, ESRD patients with HIPP assistance and, on the other, all other types of patients. A healthcare provider that contributes to AKF becomes a "financially interested provider" under AB 290, *see* § 3(h)(2)(A), and AB 290 directs plans to provide lower reimbursement rates to those providers who treat ESRD patients with HIPP assistance, *see* § 3(e). AB 290 thus frustrates Congress's objectives because it treats ESRD patients with HIPP assistance differently from other patients, creates financial incentives for those patients to leave their private insurance coverage (foisting additional costs onto Medicare), and establishes a new regulatory framework for ESRD patients unique to

California.  *See Marietta*, 142 S. Ct. at 1972 (noting that Congress designed the MSPA to prevent "denying or reducing coverage for an individual who has end-stage renal disease").

The State has argued that AB 290 does not differentiate between patients "based on their ESRD status," Defs.' MSJ 13, but that carefully worded defense misses the broader point.  AB 290 provides that any financially interested provider that supports AKF will receive a lower Medicare reimbursement rate when treating an ESRD patient who receives AKF assistance, rather than the typically higher rate negotiated by a provider and insurer that applies to all other patients.  The California statute thus treats ESRD patients differently, ensuring that some ESRD patients receive different benefits merely because they have received charitable financial assistance under the system that the federal government has approved.  And because AB 290 seeks to create incentives for patients to move onto Medicare (and leave private insurance), it directly conflicts with Congress's goals of preventing private payers from forcing ESRD patients onto Medicare coverage.  *See Cosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) (obstacle preemption requires "examining the federal statute as a whole and identifying its purpose and intended effects").

In these circumstances, the administrative practicalities that the Supreme Court concluded weighed against recognizing a disparate-impact theory of liability in *Marietta* weigh in favor of finding preemption here.  *See Marietta*, 142 S. Ct. at 1974.  Applying a preemption analysis, the Court would not have to determine the appropriate level of benefits for outpatient dialysis; it would merely recognize that AB 290 interferes with the careful balance of objectives that the MSPA seeks to achieve.  Indeed, if AB 290 is allowed to stand, the impact on the federal program will be severe, as it will undermine the "full objectives" and "natural effect" of the MSPA.  *Cosby*, 53 U.S. at 373.  In particular, if California can create its own incentives for plan providers to shift ESRD patients onto Medicare coverage and away from private insurance, other states can also create their own unique regulatory systems, undermining the careful

balance of objectives that Congress has sought to accomplish.  The end result would be an impossible mix of regulatory schemes that undercut the MSPA's objectives by discriminating against and "reducing coverage for" ESRD patients, "thereby forcing Medicare to incur more of those costs."  *Id.* at 1972.  Indeed, by targeting ESRD patients who receive HIPP assistance, AB 290 is specifically designed to disadvantage those ESRD patients who are most in need.  Allowing that type of conflicting state regulation would be "a prescription for judicial and administrative chaos[.]"  *Id.* at 1974.

## CONCLUSION

Because *Marietta* supports plaintiffs' claim that AB 290 is preempted by the MSPA, the Court should grant plaintiffs' motion for summary judgment.


Dated:  November 17, 2022          **KING & SPALDING LLP**


By: */s/Joseph N. Akrotirianakis*
    JOSEPH N. AKROTIRIANAKIS
    ASHLEY C. PARRISH

    Attorneys for Plaintiffs
    JANE DOE, STEPHEN
    ALBRIGHT, AMERICAN KIDNEY
    FUND, INC., and DIALYSIS
    PATIENT CITIZENS, INC.